AO-106 (Rev. 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

FILED
MAR 20 2023
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| In the Matter of the Search of<br>**A *red Apple iPhone cell phone, property number:***<br>***35695; a purple Apple iPhone cell phone, property***<br>***number: 35696, and a black Samsung Galaxy S7 Edge***<br>***cell phone, IMEI number: 357216072849475, property***<br>***number: 35697, Currently Stored at Rogers County***<br>***Sheriff's Office, 114 S Missouri Ave, Claremore,***<br>***Oklahoma*** | )<br>)<br>)<br>)<br>) |

Case No. 23-mj-179-JFJ

**FILED UNDER SEAL**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the Northern District of Oklahoma , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. §§ 2252 (a)(2) and 2252(b)(1)** | **Distribution and Receipt of Child Pornography**<br>**Possession of Child Pornography** |

The application is based on these facts:
**See Affidavit of TFO John Haning, HSI, attached hereto.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO John Haning, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/20/23, 2:54 pm

_____
*Judge's signature*

City and state: Tulsa, Oklahoma

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of a red Apple iPhone cell phone, property number: 35695; a purple Apple iPhone cell phone, property number: 35696, and a black Samsung Galaxy S7 Edge cell phone, IMEI number: 357216072849475, property number: 35697, Currently Stored at Rogers County Sheriff's Office, 114 S Missouri Ave, Claremore, Oklahoma | Case No. _____  <br><br> <u>FILED UNDER SEAL</u> |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, John Haning, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of property—three electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am an Investigator for the Rogers County Sheriff's Office and have been so employed since 2015 as a

Deputy Sheriff Investigator and who is commissioned with the Cherokee Nation

Marshall Service and is a Task Force Officer ("TFO") with the Federal Bureau of

investigations ("FBI") and a Task Force Officer with Homeland Security

Investigations ("HSI"). I graduated from Rogers State University in 2010 with a

bachelor's degree in Criminal Justice Administration. I was trained by the State of

Oklahoma Council on Law Enforcement Education and hold an Advanced Peace

Officer Certification. During my career in law enforcement, I have accumulated

approximately 3,000 hours of law enforcement continuing education hours and have

participated in numerous cases involving sexual crimes against children, violent

crimes against children, Internet crimes against children, and human trafficking. I

have participated in the investigation of cases involving the use of computers and the

Internet to commit violations of child exploitation laws. I have participated in all

aspects of child pornography investigations, including conducting surveillance,

interviewing suspects, and executing arrest and search warrants.  I have received

training and gained experience in child exploitation investigations, interviewing and

interrogation techniques, arrest procedures, search warrant applications, the

execution of searches and seizures, and various other criminal laws and procedures.

3. As part of my duties as an HSI TFO agent, I investigate criminal violations

relating to child pornography, including the production, transportation, distribution,

receipt, and possession of child pornography, in violation of Title 18, United States

Code, Sections 2252(a)(2) and 2252(b)(1), Distribution and Receipt of Child

Pornography, and Title 18, United States Code, Sections, 2252(a)(4) and 2252(b)(2),

2

Possession of Child Pornography. I have received training in the areas of child pornography and child exploitation and have observed and reviewed numerous examples of child pornography, as defined in Title 18 United States Code, Section 2256, in all forms of media. I have been involved in several child pornography investigations and am familiar with the tactics used by individuals who collect and distribute child pornographic material.

4. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from conducting this investigation, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

5. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1), Distribution and Receipt of Child Pornography, and Title 18, United States Code, Sections, 2252(a)(4) and 2252(b)(2), Possession of Child Pornography, will be located in the electronically stored

3

information described in Attachment B and is recorded on the Devices described in Attachment A.

### Identification of the Device to be Examined

6. The property to be searched is a red Apple iPhone cell phone, property number: 35695; a purple Apple iPhone cell phone, property number: 35696; and a black Samsung Galaxy S7 Edge cell phone, IMEI number: 357216072849475, property number: 35697, hereinafter the "Devices."

7. I assisted Rogers County Sheriff's Office Investigators to assign unique property numbers to each of these Devices to maintain a strict chain of custody, and to ensure that we will be able to identify the devices later.

8. Out of an abundance of caution, I did not turn the power on for the red Apple iPhone cell phone, property number: 35695, and the purple Apple iPhone cell phone, property number: 35696, to obtain the International Mobile Equipment Identity ("IMEI") number, which is a unique identification or serial number that all mobile phones and smartphones have. I was able to obtain the following IMEI number: 357216072849475 for the black Samsung Galaxy S7 Edge cell phone, property number: 35697 because the IMEI number was located on a sticker on the back of phone.

9. The Devices are currently located at Rogers County Sheriff's Office located at 114 S Missouri Ave, Claremore OK 74017, Rogers County Sheriff's Office.

10. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

### Probable Cause

11. On April 1, 2021, I received the following Internet Crimes Against Children ("ICAC") cyber tips: 87451790, 72584393, and 62285676. I reviewed images associated with one of the three cyber tips.  I saw an image that shows a prepubescent child under the age of 12 years old with a male penis in his mouth and an image of a child under 12 years old engaged in a sex act.

12. The three cyber tips consisted of three different Snapchat accounts. Through the cyber tips, Snapchat included information regarding the username, date of birth, email address, and IP address for each of the three accounts.

13. Each account had a different username and email address associated with it. All three of these accounts were linked by the following same Internet Protocol ("IP") address: 108.254.139.146.

14. That same IP address was linked to the following three email accounts: taylorhaley.t09@gmail.com, braybull@gmail.com, and tefftbob@gmail.com.

15. The email address of braybull@gmail.com was associated with a date of birth of XX/XX/1998.

16. I requested a subpoena from HSI to acquire account holder information for the IP address: 108.254.139.146.

17. On May 26, 2021, I received legal process back from AT&T, which was the internet provider managing the IP address at the time where the images were being submitted from. The IP address returned to a house located at 808 W 23rd Street N, Claremore, Oklahoma 74017, which is located within the Cherokee Nation and in the Northern District of Oklahoma.

18. AT&T provided the IP address account holder's information of Evelyn Bull with a billing address of 808 W 23rd St N, Claremore, OK 74017-2821.

19. I requested that Rogers County Sheriff's Office investigator, Larry Matter, research the occupants of the house. Information revealed that a person named Brayden Kent BULL ("BULL") resided at the house with a date of birth of XX/XX/1998, which matched the date of birth associated with the email address of braybull@gmail.com and matched one of the Snapchat accounts.

20. Also based on the research from Larry Meter, I determined that Evelyn Bull was BULL's mother and that she worked as an Oklahoma Department of Corrections Probation Officer.

21. I called HSI and spoke to SA Dustin Carder. SA Carder told me that BULL had previously been arrested as a juvenile for possession of child pornography when he was 17 years old.

22. I researched BULL's tribal status and determined that BULL is an enrolled member of the federally recognized Navajo Nation. I confirmed BULL's membership by contacting the Navajo Nation.

6

23. On November 18, 2021, at approximately 9:40 am, I, along with Rogers County Sheriff's Office Investigators, served a Cherokee Nation Tribal search warrant at 808 W 23rd Street N, Claremore, Oklahoma, 74017.

24. The Devices were seized during the course of the search warrant and BULL's arrest. The purple Apple iPhone cell phone, property number: 35696, and an Apple watch was in BULL's possession when the search warrant was executed. The red Apple iPhone cell phone, property number: 35695, and black Samsung Galaxy S7 Edge cell phone, IMEI number: 357216072849475, property number: 35697, were located BULL'S bedroom.

25. BULL was the only occupant staying in that bedroom.

26. BULL was the only occupant of the residence when I and Rogers County Sheriff's Office Investigators arrived. I placed BULL into hand cuffs and had him sit with me in my vehicle. I read BULL his Miranda rights and he agreed to speak with me. I conducted an interview with BULL outside of his residence in my unmarked vehicle.

27. During the interview BULL disclosed that he has an addiction for child pornography and that in 2015 he was arrested by HSI for Child Sexual Abuse Material ("CSAM").

28. BULL confirmed that he was currently still on probation for ten years from his 2015 arrest in Rogers County, Oklahoma.

29. BULL confirmed the Snapchat account emails he used that were associated with the three cyber tips: braybull@gmail.com, taylorhaley.t09@gmail.com, and

7

tefftbob@gmail.com. BULL also confirmed use of the following additional e-mail accounts: bull-brayden@yahoo.com and bulbrayden@gmail.com.

30. BULL stated that if one account would get closed, he would then open another account.

31. BULL stated that he would go onto the website omegle.com and search for the key word "pedmeg," which would then take him into chat groups with a similar interest.

32. BULL admitted that once he gained access to these chat groups he would send and receive child pornography. BULL also stated that he downloaded these images.

33. BULL admitted that he has sent and received nude photos to 17-year-old minors that he met on Snapchat.

34. BULL showed me a video on the purple Apple iPhone cell phone, property number: 35696, of a prepubescent child under the age of 12 years old being sexually assaulted by an adult male.

35. The Devices are currently in storage at the Rogers County Sheriff's Office property room, which is located at 114 S. Missouri Ave, Claremore, Oklahoma 74017. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the Rogers County Sheriff's Office.

8

**Technical Terms**

36. Based on my training and experience, I use the following technical terms to convey the following meanings:

      a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital

9

cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices

can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e.   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work

11

with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

37. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience,

examining data stored on devices of these type can uncover, among other things, evidence that reveals or suggests who possessed or used the Devices.

### Electronic Storage and Forensic Analysis

38. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

39. I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. I know that in many cases, cellular telephones maintain photographs of illegal activities, including possession, receipt, and distribution of child pornography. These photos are sometimes stored in their cellular phones and often are transmitted or sent from one electronic media device to another. I also know that cellular phones may also contain notes regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages and emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

40. I know that cellular telephones are utilized by the majority of individuals in the United States and have become a staple of communication between individuals using text messaging, visual and audible communications (telephone calls and FaceTime type communications) as well as applications like "Whatsapp," "Facebook," and "Snapchat." Additionally, individuals utilize their cellular devices

13

to take pictures, keep notes, as a GPS (global positioning System) device, and even to conduct illicit or illegal activity. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done through the use of Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important information to the individual. This data includes contacts used to conduct illegal activities to possession, receipt, and distribution of child pornography.

41. Cellular telephones are often used to facilitate offenses and allow criminals to maintain communication with each other before, during and after the commission of offenses. I am aware that cellular telephones have the capacity to store a vast amount of information, including but not limited to: telephone numbers, voice messages, text messages, e-mail, photographs, videos, address books, records, phone call histories, contact and other information. This information may be contained on the cellular telephone.

42. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

14

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

15

e.      Further, in finding evidence of how a device was used, the

purpose of its use, who used it, and when, sometimes it is necessary to

establish that a particular thing is not present on a storage medium.

43. *Nature of examination.* Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit the examination of the

Devices consistent with the warrant. The examination may require authorities to

employ techniques, including but not limited to computer-assisted scans of the entire

medium, that might expose many parts of the Devices to human inspection in order

to determine whether it is evidence described by the warrant.

44. *Manner of execution.* Because this warrant seeks only permission to examine

devices already in law enforcement's possession, the execution of this warrant does

not involve the physical intrusion onto a premises. Consequently, I submit there is

reasonable cause for the Court to authorize execution of the warrant at any time in

the day or night.

45. *Methods of examination.* In conducting this examination, law enforcement

personnel may use various methods to locate evidence and instrumentalities of the

crimes under investigation, including but not limited to undertaking a cursory

inspection of all information within the Devices. This method is analogous to

cursorily inspecting all the files in a file cabinet in an office to determine which paper

evidence is subject to seizure. Although law enforcement personnel may use other

methods as well, particularly including keyword searches, I know that keyword

searches and similar methods are typically inadequate to detect all information

16

subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

## Conclusion

46. Based on the information set forth in this affidavit, I submit there is probable cause to believe that Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1), Distribution and Receipt of Child Pornography, and Title 18, United States Code, Sections, 2252(a)(4) and 2252(b)(2), Possession of Child Pornography, have been violated, and that evidence of these offenses, more fully described in Attachment B, are located on the Devices described in Attachment A. I respectfully request that this Court issue a search warrant for the property described in Attachment A, authorizing the seizure of the items described in Attachment B.

47. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

John Haning
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to by phone on March 20th, 2023.

HONORABLE JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE

18

## ATTACHMENT A

### Property to be Searched

The property to be searched is a red Apple iPhone cell phone, property number: 35695; a purple Apple iPhone cell phone, property number: 35696; and a black Samsung Galaxy S7 Edge cell phone, IMEI number: 357216072849475, property number: 35697, hereinafter the "Devices." The Devices are currently located at the Rogers County Sheriff's Office, 114 S Missouri Ave., Claremore, Oklahoma, 74017.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.





# ATTACHMENT B

## Particular Things to be Seized

All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1), Distribution and Receipt of Child Pornography, and Title 18, United States Code, Sections, 2252(a)(4) and 2252(b)(2), Possession of Child Pornography, including:

1. Records relating to communication with others as to the criminal offense(s) listed above; including incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

2. Records relating to documentation or memorialization of the criminal offense(s) listed above, including voice memos, photographs, videos, and other audio and video media, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, including device information, geotagging information, and information about the creation date of the audio and video media;

3. Records relating to the planning and execution of the criminal offense(s) above, including Internet activity, firewall logs, caches, browser history, and

cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

4. Application data relating to the criminal offenses listed above;

5. Threatening communications related to the criminal offenses listed above;

6. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history;

7. All records and information related to the geolocation of the Device(s) and travel in furtherance of the criminal offense(s) listed above; and

8. All records and information related to the coordination, agreement, collaboration, and concerted effort of and with others to violate the criminal statutes listed above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2